## BOODY *v.* EMERSON.

The acts of one who has been appointed administrator by a court of probate, having competent jurisdiction, are valid as it respects third persons having an interest in them; and the regularity of the proceedings of such court, in making the appointment, cannot be made the subject of inquiry in an action brought to try a title acquired under such administrator.

To obtain license of the probate court to sell real estate, it is not necessary that minors, entitled by the terms of the statute to notice of the petition, should have guardians appointed.

WRIT OF ENTRY, to recover a tract of land, situated in

the town of Strafford. The tenant pleaded the general issue.

The land was formerly owned and in the possession of Joseph Boody, who died seized of the same before April 27, 1824, having made his last will April 12, 1822, by which he devised one half of the land to the plaintiff, his heirs and assigns forever, and the use and income of the remaining half thereof during his natural life, and the last mentioned half, after his decease, to Joseph B. Boody, the plaintiff's son, his heirs and assigns.

This will was proved by the plaintiff, who was named in it as executor, April 27, 1824.

Joseph B. Boody was born in June, 1821, and had never had a guardian.

On the 17th of October, 1832, Pearson Cogswell, claiming to be a creditor of the estate of Joseph Boody, deceased, petitioned the probate court for the removal of the plaintiff from the trust of executor, and the appointment of an administrator *de bonis non;* on which petition an order of notice was issued, for a hearing on the first Thursday of December, then next, and notice was accordingly given, and the petition and order returned.

At a probate court holden in March, 1833, the appointment of the plaintiff as executor was revoked, and Cogswell was appointed administrator *de bonis non*, with the will annexed, as appeared from a record of the decree.

Cogswell gave bonds according to law, and on the 14th day of December, 1835, petitioned the probate court that so much of the real estate, formerly of Joseph Boody, deceased, should be sold as would be necessary to raise the sum of $450; and notice of its pendency having been ordered and given, license was accordingly granted on the first Thursday of December, 1835.

The administrator, having taken the oath and advertised the sale of the real estate, as required by law, on the 30th day of August, 1836, made sale thereof to the tenant

for $450—he being the highest bidder—and on the same day executed to him a deed of the land, in due form of law.

Joseph B. Boody left this State and removed with his father and his family to Canada in the winter of 1831–2, and did not return to this State till some time in 1842.

*Elkins & Perley*, for the demandant.

*Bell*, for the tenant.

WOODS, J. This action brings into question the defendant's title, derived from an administrator's sale. To this two objections are stated. One is that a devisee of the deceased person, for the satisfaction of whose debts the land was sold by the administrator, was a minor at the time of the sale and of the preliminary proceedings, and that no guardian was appointed, so that his interests could be properly represented in the court of probate before which the proceedings were had, and by whose authority the sale was consummated.

The proceedings required to enable an administrator to make a valid sale of real estate are particularly prescribed by the statute. 1 N. H. Laws 365. It is not necessary for him to do more than what is there required. He cannot procure guardians to be appointed to the children who may have an interest in the proceeding. He is required to give them notice in such manner as may be directed by the court. But it is no part of his duty to require the appointment of guardians to the minors, nor is the purchaser of the land at the administrator's sale bound to inquire whether such guardians have been appointed. The law does not annex such a condition to the sale, nor embarrass it by the necessity of such inquiries on the part of the purchaser. Such appears to have been admitted to be the law in *French* v. *Hoyt*, 6 N. H. Rep. 370.

More attention has been bestowed by the counsel of the parties upon another objection presented in the case.

The will of Joseph Boody was proved by John Boody, to whom letters testamentary were granted on the 27th day of April, 1824. On the 17th day of October, 1832, proceedings were instituted, having for their object the revocation of these letters, and the appointment of an administrator *de bonis non*, with the will annexed. On this petition an order of notice was issued for a hearing, to be had on the first Thursday of December next following; and at a probate court held in the ensuing March the letters were revoked, and the administration granted to Pearson Cogswell, under whose deed the defendant derives his title.

The petition and order for a hearing, to be had on the first Thursday of December, were notified, as appears by the case, according to law; but the record fails to show that the hearing was postponed from that day to the session in March — the time when the decree was actually passed. And this seems to be the principal objection, that it does not appear that the parties received any notice that the petition would be heard and considered on the 7th day of March — the time at which the decree was passed — and for any thing that does appear it might have been done without notice. And it is assumed, that, for want of such evidence, the court of probate proceeded irregularly in revoking the letters that had been granted to Boody, and, in the appointment of Cogswell to be administrator of the estate; and that the former appointment must be taken to have remained in full force, and that the latter appointment was a nullity, and all the acts performed by Cogswell under color of it of the same character.

The general proposition is laid down in *Tucker* v. *Aiken,* 7 N. H. Rep. 135, that "the acts of an officer *de facto* are valid when they concern the public and the rights of third persons, who have an interest in the acts done; and

in general the acts of an officer *de facto* cannot be called in question indirectly, in a suit to which he is not a party." Numerous cases are cited in the opinions given by the members of the court, which establish and illustrate that doctrine, and demonstrate its benign bearing and consequences.

An administrator, appointed by the decree of a court of probate, having jurisdiction of the cause, should derive from that decree a power to perform official acts entitled to consideration; equal, at least, to that which is accorded to the acts of officers performed under color of an election; and the authorities are to that effect.

In *Allen* v. *Dundas*, 3 T. R. 125, it was held, that payment of money to an executor who has obtained probate of a forged will, is a discharge to the debtor of the intestate, notwithstanding the probate be afterward declared null, and administration granted to the intestate's next of kin. The decision was placed upon the ground that the spiritual court that granted the letters had jurisdiction over the subject matter, and every person was bound to give credit to the probate till it was vacated. *Buller*, J., said: "What is the effect of a probate? I am most clearly of opinion that it is a judicial act; for the ecclesiastical court may hear and examine the parties on the different sides, whether a will be or be not properly made. That is the only court which can pronounce whether or not the will be good; and the courts of common law have no jurisdiction over the subject. Secondly, the probate is conclusive till repealed, and no court of common law can admit evidence to impeach it." Alluding to the case of *Leach* v. *Howell*, Cro. Eliz. 533, he proceeds: "That is just the present case; for here there was an executor *de facto*, who had obtained a probate, and the defendant neither knew nor could tell whether he was rightful executor or not, further than he was informed by the probate, which he could not dis-

pute." As to the alleged inconvenience, he says: "But I think the inconvenience is clearly the other way; because, if there be a rightful executor, and he do not come forward, he is guilty of *laches*. Suppose such an one were to lie by for a number of years, and in the mean time all the debts were to be collected by another person, who had obtained a probate as executor, those payments ought to be protected, for during all that time the debtors could not controvert his authority."

This case was cited in *Kittredge* v. *Folsom*, 8 N. H. Rep. 98, and the general doctrine was asserted in conformity with it, that acts in which third persons have an interest, done by an administrator whose appointment is afterward vacated in consequence of the discovery of a will, are generally valid, and bind the executor. The administrator, in the case supposed, it is then said, "comes into his office by color of an authority. He is administrator *de facto*, and his acts, done in due course of administration, must be valid, so far at least as third persons are concerned."

In short, the court of probate had jurisdiction of the cause, and undoubted power, for sufficient reasons and upon proper notice, to revoke the letters granted to Boody, and to appoint Cogswell the administrator. Those acts the court performed, and the decree became a matter of public record in that court. Whether the judge proceeded upon sufficient notice, or upon sufficient reasons, it was impossible for parties treating with the administrator so appointed to know, and the law will not suffer inquiry to be made that can result in defeating an estate acquired upon the faith of such a decree, and of the validity of the appointment.

To make estates dependent upon such questions, and to require parties for their safety to go behind the decree appointing the administrator, and to inform themselves as to the regularity of the proceedings leading to it, would

throw such embarrassments in the way of administrators' sales as to render them of little practical use.

The case under consideration falls clearly within the principle that appears to be established by the authorities that have been cited. It presents a question, not whether Boody might, by proper proceedings, reverse the decree of the probate court, by which he was deprived of his letters testamentary and of his office of executor, but whether the acts of one who had, by a decree of a court of unquestionably competent jurisdiction, obtained administration of the estate, after causing the prior letters to be vacated, shall prevail, so far as to give a valid title to a party who has bought and paid value for the property, under a sale in every respect regular; or whether the executor, who has laid by for a series of years while these acts have been transpiring, shall be permitted to disturb the title of such a purchaser by showing the decree of the court of probate to have been in any respect informally obtained. We think the case does not admit of such a question, and that, upon the agreement of the parties, there must be

*Judgment for the tenant.*